**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

HOWARD SCHULTZ & ASSOCIATES INTERNATIONAL, INC.,

Plaintiff,

v.

EVERT SOFTWARE, INC., AND HARRY A. EVERT,

Defendants.

Civil No. 01-547 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

---

David A. Engen and Damon L. Ward, BLACKWELL IGBANUGO ENGEN SAFFOLD, 3601 West 76th Street, Suite 250, Minneapolis, MN 55435, for plaintiff.

Thomas J. Shroyer and H. Le Phan, MOSS & BARNETT, P.A., 4800 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN, 55402, for defendants.

Howard Schultz & Associates International, Inc. ("HS&A") brings this lawsuit against Harry A. Evert ("Evert") and Evert Software, Inc. ("Evert Software") asserting claims for breach of contract, tortious interference with contract, misappropriation of trade secrets pursuant to Minn. Stat. § 325C.01 and common law unfair competition. The matter is now before the Court on HS&A's motion for a preliminary injunction. HS&A

FILED MAY 0 4 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

seeks to enjoin defendants from violating the noncompete clause in their agreements, from disseminating plaintiff's proprietary, confidential, and trade secret information, and from interfering with plaintiff's contractual relations with its customers and subcontractors. Because HS&A has not demonstrated that it is likely to succeed on the merits of its claim and has not shown that it will suffer irreparable harm absent an injunction, the Court denies HS&A's motion for preliminary injunctive relief.

## BACKGROUND

HS&A is in the business of conducting accounts payable audits for businesses. Essentially, HS&A attempts to recover money for its clients that was either over paid or not realized during the accounts payable process. Auditing accounts payable consists of inspecting a client's purchasing, shipment and payment records to determine if the client was over billed, if it overpaid a vendor, or if it failed to claim an available credit or discount. Large retail businesses, such as Target and Wal-Mart, often conduct their own internal audits of accounts payable, and then hire outside firms, such as HS&A, to conduct a second audit in hopes of recovering additional overpayments or unapplied credits.

HS&A employs independent contractors to perform audit services for its clients. Defendant Harry Evert began to work for HS&A as an independent contractor performing accounts payable audits in 1976.[1] Evert entered into another agreement with HS&A on June 1, 1977. That agreement outlined the terms and conditions of the parties'

[1] Both parties acknowledge that Evert entered into some type of agreement with HS&A at that time, but neither party has been able to locate a copy of the agreement.

relationship. The agreement was to last for a term of one-year and then automatically renew for additional one-year periods unless terminated by either party. Included in the agreement was a restrictive covenant and a confidentiality provision. The restrictive covenant provided that

> for a period of thirty (30) months after the termination of this agreement, Evert will not in any capacity whatsoever or by any means of any corporation or other entity . . .
>
> e) participate in an accounts payable audit for any person, firm, corporation, or entity for which Evert performed such services during the term of this Agreement
>
> f) solicit any client or customers of [HS&A] for the opportunity of performing an accounts payable audit or participate in making an audit for such client or customer
>
> g) solicit any person, firm or corporation for the purpose of making an accounts payable audit or participate in making such an audit in any business community (city and immediate trade territory thereof) wherein the Corporation during the term of Evert Contract conducted an accounts payable audit for [HS&A]
>
> h) solicit any person, firm or corporation for the purpose of making an accounts payable audit or participate in making such an audit in any business community (city and immediate trade territory thereof) wherein Evert knows [HS&A] has conducted an accounts payable audit within fifteen (15) months of such solicitation
>
> i) solicit accounts payable auditing or participate in making such an audit in any community wherein the Corporation has conducted an accounts payable audit for [HS&A] within fifteen (15) months of the termination of this agreement.

The confidentiality provision in the agreement required Evert to keep auditing information he learned from HS&A confidential unless HS&A consented to disclosure in writing.

In 1981, Evert incorporated his auditing business and entered into another agreement with HS&A (on behalf of Evert, Inc.) to substitute the corporation in Evert's place. The new agreement contained the same restrictive covenant and confidentiality provision as the 1977 agreement and did not alter the working relationship between Evert and HS&A in any material way. In 1982, Evert entered into another agreement with HS&A, in which he agreed to be personally bound by the terms of the 1981 agreement.[2] Both the 1981 and 1982 agreements, like the 1977 agreement, were for a term of one-year and were to automatically renew if not terminated.

The crux of the dispute between the parties is Evert's decision to terminate his relationship with HS&A and to begin marketing and selling a software program he developed while working for HS&A called *First Recovery*. The software program is intended to assist businesses in performing internal accounts payable audits.

Evert terminated his relationship with HS&A in August 2000 to pursue the marketing and sale of *First Recovery*. HS&A argues that Evert and his company have breached the restrictive covenants and confidentiality provisions of their agreements by misusing confidential information to develop the *First Recovery* software and market it to HS&A's current customers. HS&A also argues that Evert misused its confidential

---

[2] The 1982 agreement also contained the same restrictive covenant and confidentiality provision as the 1977 and 1981 agreements.

information, trade secrets, and proprietary information to develop the *First Recovery* software.[3]

**DISCUSSION**

HS&A moves for a preliminary injunction to prevent Evert and his software company from violating the restrictive covenant in the parties' agreements and to prevent defendants from disseminating HS&A's confidential, proprietary and trade secret information. Because HS&A bears the burden of proof on a motion for a preliminary injunction and has not shown sufficient likelihood of success on the merits, the requisite irreparable harm, or that the balance of harms strongly favors HS&A, the motion is denied.

The standard for granting a preliminary injunction is outlined in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981). The Court is to weigh four factors in determining whether to grant relief: (1) whether the moving party will suffer irreparable injury absent the injunction; (2) whether the harm to the movant outweighs any potential harm that granting an injunction may cause the nonmoving parties; (3) whether there is a

[3] There also appears to be some issue raised by HS&A regarding Evert's ownership of the *First Recovery* software. In a supplemental affidavit submitted by Anne Savitski, an independent contractor who currently performs audits for HS&A. Savitski claims that she understood that the *First Recovery* software was being developed for HS&A associates and was based upon the methodologies, auditing techniques, and information gathered from HS&A associates. She also alleges that codes and methodologies used in HS&A's software programs are incorporated into Evert's *First Recovery* program. Notably, she does not identify these codes and methodologies. In response, Evert states that he has never seen nor been supplied with HS&A's Strategic Audit Processes guide, algorithms, etc. He also asserts that he has never been supplied with a copy of, or had access to the source code for HS&A's software. He claims that his software was developed entirely independently of HS&A and its software.

substantial probability that the movant will prevail on the merits; and (4) the public interest. *Id.* at 114; *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1996). The plaintiff bears the burden of proof on all four factors. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

### 1. Threat of Irreparable Harm

Plaintiff must first establish that irreparable harm will result without injunctive relief and that such harm will not be compensable by money damages. *Graham Webb Int'l. v. Helene Curtis, Inc.*, 17 F. Supp. 2d 919, 924 (D. Minn. 1998). Plaintiff has the burden of demonstrating as a threshold issue that an injunction is necessary to prevent irreparable harm. *Baker Elec. Corp., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). Possible or speculative harm is not enough. *Graham*, 17 F. Supp. 2d at 924. The absence of such a showing alone is sufficient to deny a preliminary injunction. *Gelco*, 811 F.2d at 420.

HS&A alleges that it will lose good will and customers absent an injunction and that its trade secret and confidential information will be disclosed. HS&A has not explained to the Court's satisfaction, however, why monetary damages would fail to compensate it in the event plaintiff ultimately prevails on the merits. *Bloom v. O'Brien*, 841 F. Supp. 277, 279 (D. Minn. 1993) (explaining that to show irreparable harm plaintiff must show that harm is not compensable by money damages).

In this case, HS&A has not shown that defendants' conduct will necessarily result in a loss of customers or good will. In fact, even if defendants are successful in

marketing and selling their *First Recovery* software to HS&A's current clients, there is no evidence that those clients will discontinue their relationship with HS&A. While it is possible that some of HS&A's clients could use defendants' software to become more efficient in conducting their internal audits, making it more difficult for HS&A to recover additional overpayments or unapplied credits for its clients, such harm is completely speculative. *See, e.g., Packard Elevator v. Interstate Commerce Comm'n.*, 782 F.2d 112, 115-16 (8th Cir. 1986). Additionally, as discussed below, plaintiff has failed to explain with any specificity what trade secret and confidential information that defendants will allegedly disclose. Without a more definite showing of harm that cannot be compensated monetarily, the Court finds that HS&A has not demonstrated a threat of irreparable harm.

**2. Balance of Harms**

*Dataphase* also requires that the Court balance the potential harm to HS&A with the harm that would result to other litigants in the event an injunction is issued. *Dataphase*, 640 F.2d at 114. In order to justify temporary relief, the balance of harms must weigh decidedly in favor of the moving party. *General Mills, Inc., v. Kellogg Co.*, 824 F.2d 622, 624 (8th Cir. 1987). In the event that a temporary injunction is issued, defendants would be unable to sell or market the *First Recovery* software to any of HS&A's clients or in geographic areas where Evert or HS&A has performed audits in the last fifteen months. These restrictions would likely prevent defendants from selling their software to many large retail businesses; the very types of businesses that arguably would be most interested in purchasing the software for internal audits. Although defendants

could attempt to sell software to businesses other than HS&A's clients, the harm to defendants resulting from an injunction would be to drastically limit defendants' pool of customers for 30 months. As a start-up company, this could be fatal to Evert Software's existence. While the Court realizes that there is certainly a threat of harm to HS&A in the form of some lost business, the balance of harms does not so favor plaintiff as to justify a preliminary injunction.

**3. Probability of Success on the Merits**

During the hearing on this motion, HS&A focused its attention on its breach of contract claim concerning defendants' alleged breach of the restrictive covenant. While the Court will analyze the probability of success on the merits for each of plaintiff's four claims, the Court too will focus most of its attention on plaintiff's breach of contract claim.

**a. Breach of Contract**

HS&A has alleged a claim for breach of contract, arguing that defendants have violated the noncompete provision and the confidentiality provision of the parties' agreement. The moving party must show substantial probability of success on the merits to warrant injunctive relief. *Dataphase*, 640 F.2d at 114. For purposes of this motion, the Court will assume that the restrictive covenants in the parties' agreements are valid

and enforceable.[4] Assuming that the restrictive covenants are enforceable, the Court finds that HS&A has not demonstrated a substantial likelihood of success on the merits. HS&A has not shown that defendants' conduct violates the express terms of the restrictive covenant. HS&A has also failed to explain how defendants have violated the confidentiality provision.

Employment noncompete agreements "are looked upon with disfavor, cautiously considered, and carefully scrutinized" under Minnesota law. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998) (quoting *Bennett v. Storz Broadcasting Co.*, 134 N.W.2d 892, 898 (1965)). However, noncompete agreements are enforceable if they serve a legitimate employer interest and are not broader than necessary to protect this interest. *Id.* (citing *Walker Employment Serv., Inc. v. Parkhurst*, 219 N.W.2d 437, 441 (1974)). In determining whether to enforce a particular noncompete agreement or provision, the Court is to balance the employer's interest in protection from unfair competition against the employee's right to earn a livelihood. *Id.* If the employer's interest predominates, the noncompete agreement is valid and enforceable. *Id.*

Here, HS&A has not demonstrated that defendants have violated or will violate the express terms of the noncompete provision in the parties' agreements. Throughout its moving papers, HS&A maintains that defendants have violated the noncompete clause in the agreements, but fails to provide any details to support its claim. HS&A simply asserts, in a conclusory fashion, that defendants have violated the provisions by

---

[4] The Court expresses no opinion at this stage of the proceedings as to the merit of defendants' argument that the restrictive covenants are not enforceable for failure of consideration and because they are overbroad, both in scope and in duration.

contacting HS&A clients, engaging in competition with HS&A, and seeking business from HS&A's clientele. Upon a close reading of the actual restrictive covenant, the Court cannot find that HS&A has demonstrated a substantial likelihood of success on the merits of this claim.

While in its moving papers HS&A never directed the Court to the specific provision of the restrictive covenant that it alleges defendants violated, during the hearing on this matter, HS&A argued that defendants violated paragraph "e" of the covenant, which provides that Evert will not "participate in an accounts payable audit for any person, firm, corporation, or entity for which Evert performed such services during the term of this Agreement." However, HS&A has provided no evidence to suggest that Evert or anyone associated with Evert Software has attempted to "participate" in an accounts payable audit. Evert has clearly solicited HS&A clients for the purpose of marketing and selling *First Recovery* software. But marketing and selling software is different from participating in an accounts payable audit. There is no evidence in the record to suggest that Evert or his company has any intention of performing or conducting accounts payable audits. The restrictive covenant must be limited to its plain language. *Lemon v. Gressman*, No. C7-98-2119, 1999 WL 451165, at *3 (Minn. Ct. App. July 9, 1999) (relying on plain language of noncompete agreement to reverse reformation of contract by trial court). The Court will not liberally construe the language of a restrictive covenant to include activity that is not expressly prohibited. *Ecolab v. Gartland*, 537 N.W.2d 291, 295 (Minn. Ct. App. 1995) ("[p]ublic policy requires that restrictive covenants be strictly construed and not extended beyond the true intent of the

parties"). To do so would be at odds with the directive that noncompete agreements are disfavored in law and viewed cautiously. In this case, defendants have done nothing to breach the express terms of the restrictive covenant.[5] HS&A has therefore failed to demonstrate a substantial likelihood of success on the merits of this claim.[6]

### b. Tortious Interference with Contract

HS&A also asserts a claim for tortious interference with contract, arguing that defendants have interfered with two of its contracts. Plaintiff alleges that defendants interfered with contractual agreements between HS&A and its independent contractors by insisting that the independent contractors using the *First Recovery* software sign license agreements. HS&A also claims that defendants' attempt to sell its software directly to Wal-Mart, a client of HS&A, constitutes tortious interference. Despite these allegations, plaintiff has not shown intentional procurement of a breach on the part of defendants.

In order to prevail on a claim for tortious interference with contract a plaintiff must prove: (1) the existence of a contract; (2) knowledge of the contract by the alleged wrongdoers; (3) intentional procurement of its breach; (4) no justification of the

[5] The only other provisions of the restrictive covenant that are even arguably implicated by defendants' conduct are paragraphs "f," "g," "h," and "i." Those paragraphs prohibit defendants from "performing an accounts payable audit," "making an accounts payable audit," and "solicit[ing] accounts payable auditing" under different circumstances. As described to the Court, defendants' conduct does not violate any of these provisions because defendants have solicited HS&A clients for the purpose of selling software, not for the purpose of engaging in accounts payable audits.

[6] HS&A also failed to provide the Court with any specific examples of disclosure or threatened disclosure of confidential information on the part of defendants. Without evidence of any specific disclosure that would violate the confidentiality provision, the Court also finds that HS&A has not demonstrated a substantial likelihood of success on the merits of its breach of contract claim related to the confidentiality provision of the parties' agreements.

interference; and (5) damages. *Midwest Great Dane Trailers v. Great Dane Ltd.*, 977 F. Supp. 1386 (D. Minn. 1997); *Kallok*, 573 N.W.2d at 361.

Here, HS&A has failed to provide affidavit testimony to support its allegations that defendants have intentionally procured the breach of a contract between HS&A and any of its clients or its independent contractors. While HS&A states in its moving papers that defendants have deliberately and intentionally delayed and/or prohibited one of its subcontractors from proceeding with an audit, that contention is not supported by the affidavit testimony provided to the Court. Plaintiff also fails to show how defendants procured a breach of plaintiff's contract with Wal-Mart. Absent a showing by HS&A that defendants have intentionally procured a breach of one of its contracts, plaintiff is unlikely to succeed on the merits of this claim. *Cyberoptics Corp. v. Yamaha Motor Co.*, No. 3-95-1174, 1996 WL 673161, at *19 (D. Minn. July 29, 1996) ("a party who seeks to recover, on a tortious interference claim, must allege and prove that the defendant actually procured a breach of an existing contract"); *Schaetzel v. Minnesota Mining and Manufacturing Co.*, No. C5-98-2023, 1999 WL 289286, at *2 (Minn. Ct. App. May 11, 1999) ("Minnesota courts have consistently ruled that tortious interference requires that the interference cause *breach* of an existing contract") (emphasis in original).

**c. Misappropriation of Trade Secrets**

Plaintiff's claim for misappropriation of trade secrets is based on Minn. Stat. §§ 325C.01 *et seq*. A cause of action for trade secret misappropriation is actionable when specific information is kept secret, is misappropriated, and is wrongfully used by another.

*Hogan v. Minnesota Mining and Manufacturing*, No. CX-96-2126, 1997 WL 177695, at *2 (Minn. Ct. App. June 11, 1997). Analysis of whether an item is a trade secret requires consideration of the following three factors: (1) the information must not be generally known or readily ascertainable; (2) the information must derive independent economic value from secrecy; and (3) the party asserting misappropriation must have made reasonable efforts to maintain secrecy of the item. *Lasermaster Corp. v. Sentinel Imaging*, 931 F. Supp. 628, 635 (D. Minn. 1996). Further, the party asserting misappropriation must establish each factor to sustain its claim. *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 958 (D. Minn. 1999).

Thus far plaintiff has failed to identify with specificity the trade secrets that it claims defendants have misappropriated. HS&A asserts that its confidential and trade secrets information includes, but is not limited to, "accounting and audit recovery business methodologies; audit principles and procedures contained in HS&A's Strategic Audit Processes guide; auditing routines, algorithms and programs constituting and/or incorporated in HS&A software; sales strategies and policies; product development information; financial and usage reports; and customer lists." However, HS&A has provided the Court with no more detailed explanation of its trade secrets than this general list. Without more, the Court cannot determine if the information is generally known or readily ascertainable or if the information derives independent value from its secrecy. In short, plaintiff has not carried its burden of showing the existence of protectable trade

secrets.[7] HS&A has therefore failed to show a substantial likelihood of success on the merits of this claim.

**d. Unfair Competition**

Plaintiff's final claim is a common law claim for unfair competition. An unfair competition claim is not an independent tort, but rather encompasses several causes of action that have been recognized in order to protect commercial interests. *Siptop, Inc. v. Ekco Group, Inc.*, 86 F.3d 827, 832 (8th Cir. 1996); *Rehabilitation Specialists v. Koering*, 404 N.W.2d 301, 305 (Minn. Ct. App. 1987). Unfair competition can include tortious interference with contract and improper use of trade secrets. *United Wild Rice v. Nelson*, 313 N.W.2d 628, 632 (Minn. 1982); *Rehabilitation Specialists*, 404 N.W.2d at 306. The likelihood of success on the unfair competition claim rests on the success of plaintiff's tortious interference and trade secret claims. Because HS&A has not yet shown a likelihood of success on either of those claims, plaintiff is also not unlikely succeed on the merits of its unfair competition claim.

Having not shown a substantial likelihood of success on the merits of its claim, the third factor in the *Dataphase* analysis weighs against issuing a preliminary injunction.

**4. Public Policy**

Neither party has articulated compelling public interest factors that weigh strongly in their favor. This factor, therefore favors neither party.

---

[7] The Court again offers no opinion as to the ultimate merit of this claim. There is simply an insufficient record before the Court at this time to find that HS&A has protectable trade secrets that have been misappropriated or for which there is a threat of misappropriation.

## CONCLUSION

Having evaluated all of the *Dataphase* factors, the Court finds that HS&A has failed to sustain its burden of demonstrating the need for a preliminary injunction. Given the current record before the Court, plaintiff has not demonstrated that it will experience irreparable harm absent an injunction. An ultimate award of monetary damages, if HS&A ultimately succeeds on the merits, would be sufficient to compensate it in this case. Plaintiff has also not made a showing that it is likely to succeed on the merits of its claims. The balance of harms and the public interest factors do not strongly favor either party. Accordingly, HS&A's motion for a preliminary injunction is denied.[8]

## ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. HS&A's motion for a preliminary injunction is **DENIED.**

2. The Court's Temporary Restraining Order [Docket No.12] is **VACATED.**

DATED: May 4, 2001
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge

[8] The Court nonetheless reiterates that its ruling on this motion in no way reflects an opinion on the ultimate merit or viability of HS&A's claims.